**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

In re: JUNDER JOE BASBAS DE )
GUZMAN and SONIA CAMACHO DE )
GUZMAN                      )     Case No. 23-24575-C-7
                            )
                  Debtors.  )
_____   )
                            )
ELMAR SIBAYAN,              )     Adv. Pro. 2024-02029
                Plaintiff,  )
v.                          )
                            )
JUNDER JOE BASBAS DE GUZMAN and )
SONIA CAMACHO DE GUZMAN,    )
                            )
                Defendants. )
_____   )

**OPINION ON FEES UNDER CALIFORNIA CIVIL CODE § 1717**

CHRISTOPHER KLEIN, Bankruptcy Judge:

Artful pleading in order not to state a contract cause of action in a bankruptcy dischargeability case does not necessarily insulate against exposure to prevailing party attorney's fees for actions "on a contract" under California Civil Code § 1717.

The victorious defendant in a nondischargeability action seeks attorney's fees based on the reciprocal prevailing party fee provisions of California Civil Code § 1717.

A business divorce agreement between 50 percent shareholders of a business required Defendant to pay Plaintiff $275,000, consisting of $137,500 cash and $137,500 backed by a note and deed of trust on Defendant's home to be recorded after the cash payment was made. The Shareholder Buyout Agreement required, pursuant to Joint Escrow Instructions, the executed Deed of Trust ("DOT") to be held in trust and not recorded until Defendant raised the $135,000 cash component by refinancing his home.

The DOT was not recorded for a year after the refinancing. In the interval before recording, another DOT was recorded, leaving Plaintiff under-secured when he eventually initiated the foreclosure proceedings that precipitated this chapter 7 case.

Plaintiff sought to except the debt from discharge under 11 U.S.C. §§ 523(a)(2) and (a)(6), alleging fraud and willful and malicious conduct in deferring recording of the DOT until after obtaining other secured debt senior in position to Plaintiff.

The Note and DOT each have attorney's fee provisions that the victorious Defendant now invokes under the reciprocal fee provision of California Civil Code § 1717.

I

## California Civil Code § 1717

California's reciprocal fee statute, as a matter of state public policy, makes reciprocal all fee provisions in contracts in favor of the prevailing party in litigation. The terms of the contractual attorney fee provision may extend to tort and other non-contract claims. In other words, all one-sided fee provisions in contracts are reciprocal and entitle the prevailing party to reasonable attorney fees. Cal. Civ. Code § 1717; <u>Santisas v. Goodin</u>, 17 Cal. 4th 599, 614 (1998)(California Supreme Court); <u>Penrod v. AmeriCredit Fin. Servs. (In re Penrod)</u>, 802 F.3d 1084, 1088 (9th Cir. 2015).

The California Supreme Court has been specific that, depending on the language of the particular contractual fee provision, § 1717 may embrace tort and other noncontractual claims. <u>Santisas</u>, 17 Cal. 4th at 622-23.

Section 1717 "was enacted to establish mutuality of remedy where a contractual provision makes recovery of attorney's fees available for only one party, and to prevent oppressive use of one-sided attorney's fees provisions." <u>Reynolds Metals Co. v. Alperson</u>, 25 Cal.3d 124, 128 (1979).

II

<u>California Civil Code § 1717 Applies in Bankruptcy</u>

It is settled that California Civil Code § 1717 applies in bankruptcy when state law issues are integral to the bankruptcy litigation. <u>Heritage Ford v. Baroff (In re Baroff)</u>, 105 F.3d 439, 442 (9th Cir. 1997); <u>Merced Proc. Credit Ass'n v. Sparkman (In re Sparkman)</u>, 703 F.2d 1097, 1099-1100 (9th Cir. 1983).

That applicability, however, was formerly circumscribed in the Ninth Circuit to exclude litigation in which the court decided only federal bankruptcy law issues. <u>Fobian v. W. Farm Credit Bank (In re Fobian)</u>, 951 F.2d 1149, 1153 (9th Cir. 1991).

The United States Supreme Court disapproved the Ninth Circuit <u>Fobian</u> rule in 2007 in <u>Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.</u>, 549 U.S. 443, 452 (2007).

In rejecting <u>Fobian</u>, the Supreme Court held that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed. It reasoned that the validity of creditor claims in bankruptcy is ordinarily a question of state law and "we generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed." In particular, it held that nothing in the Bankruptcy Code expressly disallows

3

claims for attorney's fees simply because the fees are incurred litigating questions of federal bankruptcy law. Travelers, 549 U.S. at 452-53.

A consequence of Travelers is that California Civil Code § 1717 applies in all bankruptcy litigation when a party prevails in an action "on a contract" and otherwise satisfies the essential elements of that statute. Penrod, 802 F.3d at 1088.

In Penrod, the bankruptcy court had rejected § 1717 fees because enforcement of the subject contract had been defeated under bankruptcy law, rather than non-bankruptcy law. The Ninth Circuit reversed, noting that the "bankruptcy court's reasoning might have been valid before the Supreme Court" decided Travelers, but not thereafter. Penrod, 802 F.3d at 1088.

The Ninth Circuit in Penrod explained that after Travelers, the question is whether § 1717 categorically precludes awards of attorney's fees when a party successfully limits enforcement of a contract solely on the basis of bankruptcy law. It then answered the question in the negative, concluding that California fee-shifting statutes, such as § 1717, apply to issues litigated under bankruptcy law. Penrod, 802 F.3d at 1189.

In short, § 1717 applies to bankruptcy litigation when the essential elements for that statute are satisfied.


III

Essential Elements of Civil Code § 1717

The three essential elements for Civil Code § 1717 attorney fee awards are: (1) an action "on a contract"; (2) a clause in the contract providing for fees; and (3) the movant must have

4

been the prevailing party. <u>Penrod</u>, 802 F.3d at 1088 (citing California law).


A

First Essential Element: "On A Contract."

As a matter of California law, the term action "on a contract" is liberally construed to extend to any action, as long as it "involves" a contract and one of the parties would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit. <u>In re Tobacco Cases I</u>, 193 Cal. App. 4th 1591, 1601 (2011), <u>cited by</u> <u>Penrod</u>, 802 F.3d at 1087.


1

As applied in bankruptcy, an action in bankruptcy court is "on a contract" for purposes of § 1717 if the bankruptcy court needed to determine enforceability of the agreement in order to determine dischargeability. Conversely, if the court did not need to determine whether the agreement is enforceable, then it is not an action "on a contract." <u>Penrod</u>, 802 F.4th at 1088-89 (noting effect of <u>Travelers</u>); <u>Bos v. Bd. of Trs.</u>, 818 F.3d 486, 489-90 (9th Cir. 2016); <u>cf.</u>, <u>Howard v. Ray Hodge & Assocs. (In re Howard)</u>, 2025 Westlaw 763478, 74 Bankr. Ct. Dec. 94 (9th Cir. 2025) (reversing denial of § 1717 fees).

Here, Plaintiff contends that his nondischargeability action was not "on a contract" because the Complaint pled only fraud and willful and malicious conduct under §§ 523(a)(2) and (a)(6). The argument falls short where, as here, the fraud and conduct allegations can only be assessed by referring to the Shareholder

Buyout Agreement and its payment and security provisions. Even before *Travelers* disapproved *Fobian*, the fact that review of the agreement was essential to understanding the allegations could have warranted § 1717 fees in bankruptcy under *Baroff*. After *Travelers*, Plaintiff's argument is foreclosed.

2

At the trial on the § 523(a)(2) count, Plaintiff urged that Defendant made a fraudulent misrepresentation by agreeing in the Shareholder Buyout Agreement to record the DOT in favor of Plaintiff, without disclosing that the DOT in favor of Plaintiff might not be recorded until long after obtaining the contemplated financing loan and might become subject to yet another loan, thereby leaving Plaintiff in a less secure junior position.

At the trial on the § 523(a)(6) count, Plaintiff urged that Defendant's one-year deferral of recording Plaintiff's DOT until after the financing loan was obtained was both willful and malicious.

Determining whether Defendant made a material misrepresentation or acted willfully and with malice required the Court to examine the terms of the Shareholder Buyout Agreement and the attendant Note and DOT in order to determine enforceability.

The gravamen of the Complaint was that Defendant breached his contractual obligation to cause the DOT to be recorded promptly upon obtaining the intended financing. The evidence established the Plaintiff's DOT was executed November 17, 2021, concurrent with entering into the Shareholder Buyout Agreement, which supposedly had a 90-day "no recording" clause. Defendant refinanced for $464,000 with Nationstar Mortgage LLC as evidenced by a DOT executed January 25,

2022, and recorded February 3, 2022. Although the contract anticipated Plaintiff's DOT would then be recorded in February 2022, it was not recorded until February 9, 2023. During that one-year delay, Defendant obtained a $39,400 home equity line of credit from Sequoia Federal Credit Union on December 15, 2022, for which the DOT was recorded January 9, 2023, i.e., 31 days before Plaintiff's DOT was recorded.

The existence of the Sequoia DOT relegated Plaintiff to a partially unsecured position when the chapter 7 case was filed.

This Court determined from examining the Shareholder Buyout Agreement: (1) that the Defendant was required to obtain financing to make the first payment; and (2) that, to enable Defendant to raise the $137,500 cash payment, the agreement did not mandate immediate recording by Defendant, and was otherwise vague about timing.

Interpreting the transaction in the context of the Shareholder Buyout Agreement and the attendant Note and DOT, this trier of fact concluded Defendant did not make a representation at the time of the agreement that was false, knowingly false, made for the purpose of inducing reliance by Plaintiff, and upon which Plaintiff justifiably relied as required by § 523(a)(2).

While there was little doubt that Defendant breached the payment and recording provision of the Shareholder Buyout Agreement, this trier of fact was not persuaded that the failure was animated by the malice required by § 523(a)(6). Hence, this Court ruled the debt owed to Plaintiff to be dischargeable.

The Shareholder Buyout Agreement was central to the adversary proceeding. The Note and DOT and the recording thereof were integral features of the contractual transaction. The foreclosure prompting the chapter 7 filing was an exercise in enforcing that agreement.

Mindful of the liberal construction interpretation of § 1717 applied by California courts, it follows that the first essential element that there be an "action on a contract" is satisfied.

B

Second Essential Element: Contract Fee Clause

The Note and DOT required by the Shareholder Buyout Agreement contain contractual fee clauses.

The Note provides for attorney fees if the holder prevails "in a lawsuit to collect on it."[1]

The DOT requires the Trustor "to appear in and defend any action purporting to affect the security, or the rights and powers of Beneficiary or Trustee; and to pay all costs and expenses ... including attorney fees in a reasonable sum, in any such action in which beneficiary or Trustee may appear."[2]

The application of those clauses in the Note and the DOT against the Plaintiff may come as a surprise but, in view of § 1717, should not be regarded as an unintended consequence of prosecuting an adversary proceeding premised on breach of the Shareholder Buyout Agreement to which the Note and DOT were integral.

It is ironic that Plaintiff's foreclosure activity prompted the

---

[1]Note: "If the holder(s) of this note prevail(s) in a lawsuit to collect on it, the signer(s) agree(s) to pay the holder(s)' attorney fees in an amount the court finds to be just and reasonable." Promissory Note Secured by DOT, Plaintiff's Ex. 3.

[2]DOT: The Trustor agrees "To appear in and defend any action or proceeding purporting to affect the security, or the rights and powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidencing title and attorney fees in a reasonable sum, in any such action or proceeding in which beneficiary or Trustee may appear." DOT and Assignment of Rents Securing a Promissory Note, Plaintiff's Ex. 2.

8

filing of the chapter 7 case in which he prosecuted this adversary
proceeding to an unhappy end. Hoist on his own petard.

Accordingly, the second § 1717 essential element that there be a
contractual clause providing for fees is satisfied.


C

Third Essential Element: Prevailing Party

The prevailing party for purposes of § 1717 is determined by the
court based on the party who recovered, in the words of § 1717(b),
"greater relief" in the action on the contract. The court has
discretion to determine there is no party prevailing. In addition,
there is no prevailing party where an action is voluntarily dismissed
or dismissed pursuant to settlement. Cal. Civ. Code § 1717(b).

Here, the successful defense of the nondischargeability counts
afforded Defendant the "greater relief." He is the prevailing party.

Accordingly, the third § 1717 essential element is satisfied.


D

The Supreme Court's Traveler's analysis that claims allowable
under applicable state law are allowable in bankruptcy leads to the
conclusion that the request for reasonable attorney's fees under
California Civil Code § 1717 is allowable in this case.


IV

This Fee Application

The victorious Defendant applies under California Civil Code
§ 1717 for attorney's fees and expenses totaling $20,571.90,
consisting of $19,195.00 in fees, plus expenses of $1,376.00, and

1   has the burden of proof on whether the services were reasonable

2   and appropriate.

3      Plaintiff opposes, asserting that $1,057.50 of the fees

4   claimed should not be allowed. This Court agrees with Plaintiff.[3]

5      With the exception of the three categories of items set

6   forth in the margin, this Court finds in its judgment and

7   experience that the fees and expenses requested are reasonable,

8   appropriate, and acceptable.

9      Therefore, $19,514.40 will be awarded as attorney's fees and

10   expenses pursuant to California Civil Code § 1717.

11

12                        ***

13      As explained in this decision, artful pleading alleging only

14   non-contract causes of action does not necessarily operate to

15   dodge exposure to liability for action "on a contract" fees

16   pursuant to California Civil Code § 1717.

17      An appropriate order awarding fees and expenses in the total

18   amount of $19,514.40 will be entered.

19

20   Dated: June 09, 2025

21

22

23                      United States Bankruptcy Judge

24      ³Services that do not relate to the adversary proceeding
($270.00) are neither necessary, nor reasonable. Services for

25   obtaining vacation of entry of default ($292.50) by counsel who
reviewed the Complaint in ample time to have prepared and filed a

26   response are neither necessary, nor reasonable – the opposing party
should not be required to pay the expenses of the opponent's

27   disorganization. Services for motions that were not filed ($495.00)
and that could have prevented entry of default are not necessary and

28   not appropriate for fee-shifting purposes, even though they may be
appropriate for a lawyer to charge his client.